IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 25, 2005 Session

## STATE OF TENNESSEE v. BROOKS JONATHAN LEE

**Appeal from the Criminal Court for Putnam County**
**No. 03-0038     Lillie Ann Sells, Judge**

---

**No. M2004-00598-CCA-R3-CD - Filed April 26, 2005**

---

The Defendant was found guilty by jury verdict of second offense driving under the influence of an intoxicant (DUI), simple possession of marijuana, and possession of drug paraphernalia, all Class A misdemeanors. He was sentenced to concurrent sentences of eleven months and twenty-nine days with eighty-five days to be served, had his driver's license suspended for two years, and was fined a total of $3,150. The Defendant now appeals his DUI conviction claiming: 1) the trial court erred in admitting testimony from an expert witness; and 2) the evidence was insufficient to support his DUI conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

William Cameron, Cookeville, Tennessee, for the appellant, Brooks Jonathan Lee.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William E. Gibson, District Attorney General; and Thomas Tansil, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The DUI conviction at issue stems from a traffic stop conducted by the Cookeville Police during the early morning hours of October 13, 2002. The Defendant, Brooks Jonathan Lee, was pulled over for erratic driving. After failing several field sobriety tests, the Defendant was arrested for DUI. A search incident to arrest led to the discovery of a small amount of marijuana and drug paraphernalia in the Defendant's automobile. In March of 2003, a Putnam County grand jury returned an indictment against the Defendant charging him with three offenses: 1) Second offense

DUI, 2) simple possession of marijuana, and 3) possession of drug paraphernalia. A jury trial was conducted on June 5, 2003.

At trial, Officer Craig Wilkerson of the Cookeville Police Department testified that at approximately 1:30 on the morning of October 13, 2002, he observed a vehicle traveling down the middle of the road, swerve to miss oncoming traffic, and cross the double yellow line. Officer Wilkerson activated his blue lights and dashboard camera and stopped the vehicle. The Defendant was the driver and sole occupant of the vehicle. Officer Wilkerson stated that the Defendant's "speech [was] somewhat slurred," that his "eyes were red and watery," and "there was a slight odor of intoxicant coming from the vehicle."

Officer Wilkerson administered three separate field sobriety tests. He first requested the Defendant to perform the nine-step walk and turn test, which he determined the Defendant failed. Officer Wilkerson stated that the Defendant "stepped off the line twice on the first nine steps, which caused him to miss heel to toe on those two steps," the Defendant "use[d] his arms for balance," and during the instructions the Defendant "couldn't hardly balance, he almost fell over." Officer Wilkerson noted that the Defendant also stepped off the line twice on his return nine steps.

Next, Officer Wilkerson administered the one leg stand test. He stated the Defendant also failed this test, explaining that the Defendant "used his arms to keep his balance and he almost fell over. So he was hopping, he was swinging, he put his foot down four times." Finally, Officer Wilkerson asked the Defendant to recite the alphabet from C to X, which the Defendant was able to do. Based on the Defendant's performance on the field sobriety tests, the erratic driving, and other observations, Officer Wilkerson placed the Defendant under arrest for DUI. The Defendant consented to a blood test.

On cross-examination, Officer Wilkerson conceded that he did not know what "slight odor" he smelled upon stopping the Defendant, considering no alcohol was found in the vehicle and the lab report indicated there was no alcohol in the Defendant's blood. Officer Wilkerson also testified the Defendant explained he was having problems with his contacts when asked why his eyes were red and watery.

Officer Jeff Johnson of the Cookeville police testified that he responded to the traffic stop as a back-up officer and observed Officer Wilkerson administer two of the three field sobriety tests. Officer Johnson stated that he also believed the Defendant failed the nine-step walk and turn test and the one-leg stand test. Officer Johnson further testified that upon searching the Defendant's vehicle he discovered marijuana in a backpack and a door panel, and a hemostat on the floorboard. Officer Johnson also stated that when he showed the Defendant the marijuana he discovered in the vehicle, the Defendant told him: "If I had known that was there I would have smoked it."

On cross-examination Officer Johnson testified that the marijuana found was a small amount, under half an ounce. Also, Officer Johnson admitted that hemostats are commonly used by

fisherman, but noted they are also frequently used by marijuana users, and no other fishing tackle was found in the Defendant's vehicle.

After a jury-out voir dire, witness Kelly Hopkins, a toxicologist with the Tennessee Bureau of Investigation (TBI) working out of the Nashville Crime Lab, was certified by the trial court as an expert in toxicology over the objection of the defense. Ms. Hopkins testified that she analyzed the Defendant's blood sample and found his blood contained the following: 22.4 nanograms per milliliter marijuana metabolite, less than .25 micrograms per milliliter amphetamine, less than .25 micrograms per milliliter methamphetamine, and less than .05 micrograms per milliliter of mirtazapine, an antidepressant. The Defendant tested negative for barbiturate, cocaine, and opiate. There was no alcohol found in his blood.

Ms. Hopkins testified that the amount of marijuana metabolite in the Defendant's system indicated that he was a "user" and had not merely ingested the marijuana through second-hand smoke. Ms. Hopkins could not give a time frame in which the Defendant last smoked marijuana. She did note that of the four drugs she discovered only one was a legal drug obtained by prescription. When asked if the Defendant would have been under the influence of drugs based upon the results of the blood test, Ms. Hopkins stated that "[i]t's possible," but conceded that it was also possible that a person with the same blood test results may not have been under the influence.

The Defendant testified that he was not under the influence when he was stopped by Officer Wilkerson. He stated that he smoked marijuana "a couple of days" before the stop, and had taken the prescription drug Concerta in the past, but did not take anything the day before his arrest. The Defendant testified that he had "bad ankles," which could explain his poor performance on the two field sobriety tests, but admitted he had no trouble walking up to the witness stand. The Defendant also admitted that he had some methamphetamine in his system the night of the arrest, but maintained he was not under the influence.

At the conclusion of the trial, the jury returned a verdict of guilty on all three counts. A sentencing hearing was held in August of 2003. Following the sentencing hearing the trial court accepted a sentence agreement presented by the two parties and imposed concurrent sentences of eleven months and twenty-nine days with eighty-five days to be served, loss of driver's licence for two years, and fines totaling $3,150. The Defendant filed a motion for new trial in September of 2003, which was denied by the trial court on March 2, 2004. The Defendant timely filed a notice of appeal.

**ANALYSIS**

The Defendant now claims the trial court erred in admitting testimonial evidence from the expert witness and asks that all such testimony be stricken. The Defendant also asserts that without the expert testimony, there is insufficient evidence to convict him of driving under the influence of an intoxicant and therefore his DUI conviction should be reversed. We disagree.

## I. Admission of Expert Witness Testimony

The Defendant first argues that the testimony of Ms. Hopkins was either irrelevant or prejudicial and should not have been admitted by the trial court. Specifically, the Defendant asserts that Ms. Hopkins' statement the Defendant was a marijuana "user" was unfairly prejudicial and violated Tennessee Rule of Evidence 403. Also, Ms. Hopkins' failure to narrowly quantify the amounts of the drugs she found made her testimony irrelevant, and therefore its admission violated Tennessee Rule of Evidence 402. Finally, the Defendant claims the fact that Ms. Hopkins could not state with certainty that the amount of drugs found in his blood rendered him "under the influence" made her testimony that it was "possible" he was impaired by an intoxicant both irrelevant and prejudicial.

The State argues that the Defendant's claim of trial court error in the admission of expert testimony was waived because the Defendant failed to present this issue to the trial court in his motion for a new trial as required by Tennessee Rule of Appellate Procedure 3(e). Furthermore, the State argues that the Defendant also failed to "object to any specific testimony by Ms. Hopkins at trial," and consequently also waived any complaint he has regarding "specific portions" of her testimony pursuant to Tennessee Rule of Appellate Procedure 36(a).

Tennessee Rule of Appellate Procedure 36(a) instructs this Court that it is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Additionally, Tennessee Rule of Appellate Procedure 3(e) states in relevant part: "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." See also, State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issue that should have been presented in the motion for a new trial). These procedural rules support our long-standing policy of refraining from finding a trial court to have erred in matters not brought to its attention through objections at trial and in a motion for a new trial.

However, in the case at hand, we find the Defendant did take reasonable action to alert the trial court to his claim that admitting the testimony of the expert witness was error when he objected to the witness being certified as an expert during the jury-out voir dire. Furthermore, we also find that, while crafted in terms emphasizing his claim of insufficient evidence, the Defendant's motion for a new trial also sufficiently questioned the relevance of the expert witnesses' testimony to preserve this issue on appeal. Accordingly, we elect to address on the merits the Defendant's claim of error in the admission of evidence.

The Defendant was convicted of driving under the influence of an intoxicant in violation of Tennessee Code Annotated section 55-10-401. This statute makes it unlawful for "any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads or highways of the state . . . while: Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system." Tenn. Code

Ann. § 55-10-401(a)(1). Therefore, at trial, the State bore the burden of proving the Defendant was "[u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system" through the introduction of admissible evidence.

Generally, "[a]ll relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules [of evidence], or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Thus, to be admissible, evidence must satisfy the threshold determination of relevancy set forth in Tennessee Rule of Evidence 401, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Evid. 403.

Our review of a trial court's decision on the admission of evidence based on its relevance is limited to abuse of discretion. See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999) (holding "this standard has been applied to decisions regarding the qualifications, admissibility, relevancy, and competency of expert testimony"). Furthermore, we note that this Court has traditionally acknowledged that our rules of evidence promote a "policy of liberality in the admission of evidence in both civil and criminal cases. . . ." State v. Robinson, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995).

The Defendant maintains that because the expert witness could not specifically quantify the amount of intoxicants in his blood, and could only testify to the intoxicants' presence in small quantities but not to their intoxicating effects, her testimony was not relevant to whether he was "under the influence" of any intoxicant. First, we find the three intoxicants found in the Defendant's blood test that were described as "less than" a quantified amount of micrograms per milliliter in the toxicology report were not "of such a vague value" that they should have been excluded as irrelevant. Their presence, even in those limited quantities, allowed the expert witness to conclude it was "possible" the Defendant was under the influence of an intoxicant or other drug as set forth in the DUI statute. As such, this evidence had the tendency to make the fact that the Defendant was driving under the influence of an intoxicant or other drug more probable than it would be without this evidence.

Second, the fact that an expert witness in toxicology cannot say "beyond a reasonable doubt" that the level of intoxicants in a defendant's system would have rendered him or her "under the influence" does not require the expert's testimony to be excluded as irrelevant. In the case at hand, the expert witness testified to the existence of the substances in the Defendant's blood, and twice stated that it was "possible," based solely on the results of his blood test, that the Defendant was under the influence of an intoxicant or other specified drug. This testimony certainly had the "tendency to make the existence of" the fact that the Defendant was indeed driving under the influence of an intoxicant "more probable . . . than it would be without the evidence." Tenn. R. Evid. 401.

The fact that the expert witness also testified that it was possible the Defendant was not under the influence of an intoxicant based solely on the results of the blood test does not make the testimony irrelevant, but rather goes to the weight and credibility of the expert's testimony and is a factor for the jury to consider. Accordingly, we find the trial court did not abuse its discretion in finding the expert witness testimony was relevant to an issue in the Defendant's DUI trial.

The Defendant further argues that, even if we agree with the trial court that the expert witness testimony was relevant, we should nonetheless find any probative value it contained was substantially outweighed by unfair prejudice. Specifically, the Defendant asserts that the expert witness' testimony that the Defendant was a "user" of marijuana was prejudicial, as was her testimony that the blood test results could support a verdict of guilt considering she could not reach this conclusion with certainty. We begin our analysis by first noting that our supreme court has held that "[e]xcluding relevant evidence under [Tennessee Rule of Evidence 403] is an extraordinary remedy that should be used sparingly and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion." State v. James, 81 S.W.3d 751, 757-58 (Tenn. 2002) (quoting White v. Vanderbilt Univ., 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999)).

We find the Defendant was not unfairly prejudiced by the admission of the expert witness testimony. The witness testified that the Defendant was a "user" of marijuana in the context of differentiating between an amount of marijuana matabolite present in a blood test that would indicate second-hand smoke as opposed to an amount which required direct ingestion. Under such circumstances, it was not prejudicial for the witness to submit her expert opinion that the Defendant was a "user." It is also worthy of note that the expert witness testimony now challenged by the Defendant was not the only testimony that introduced the fact that the Defendant used marijuana. Proof of the Defendant's possession of marijuana and drug paraphernalia, as well as his admission to the police the night of his arrest that he smoked marijuana, was submitted to the jury through the testimony of the two arresting officers before the expert witness was called to the stand. Furthermore, the Defendant himself admitted on the witness stand that he smoked marijuana a "couple" of days prior to the arrest.

Likewise, the expert witness testimony pertaining to the presence of the drugs found in the Defendant's blood and the fact that it was "possible" these drugs rendered the Defendant "under the influence" was highly probative evidence that the Defendant was indeed under the influence of an intoxicant or other specified drug. This testimony was presented in a scientific and candid manner, and was in no way inflammatory. The Defendant has failed to meet his "significant burden" of demonstrating that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. See James, 81 S.W.3d at 757-58. Accordingly, we conclude that the expert witness testimony was both relevant and not unfairly prejudiced. We find the trial court did not err in admitting into evidence the testimony of the State's expert witness in toxicology or the official toxicology report of the Defendant's blood test. This issue is without merit.

## II. Sufficiency

The Defendant also claims that the evidence presented at trial was insufficient to convict him, beyond a reasonable doubt, of driving under the influence of an intoxicant. We disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

As stated above, the Defendant was convicted of a DUI offense in violation of Tennessee Code Annotated section 55-10-401. This statute makes it unlawful for "any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads or highways of the state . . . while: Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system" Tenn. Code Ann. § 55-10-401(a)(1). The Defendant does not challenge the trial court's determination that his conviction was a second offense DUI, which carries a higher mandatory sentence and fine than a first offense. See Tenn. Code Ann. § 55-10-403. However, the Defendant does claim that without the testimony of the expert witness, the State presented insufficient evidence to prove beyond a reasonable doubt that the Defendant was under the influence of any intoxicant the night of his arrest. Although we have determined that the testimony of the expert witness was properly admitted, we also conclude that the evidence contained in the record on appeal is sufficient to uphold the jury's determination of guilt even without considering the expert witness testimony.

Officer Wilkerson testified that the Defendant had slurred speech, red and watery eyes, and there was an odor of an intoxicant about the Defendant's vehicle. Officer Johnson testified that he found marijuana in two different places within the Defendant's vehicle as well as drug paraphernalia commonly used when smoking marijuana. Officer Johnson also testified that the Defendant proclaimed that had he known he had marijuana with him he would have smoked it. We note that this Court has often found that an arresting officer's testimony alone is sufficient to support a conviction for driving under the influence of an intoxicant. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).

In addition to the two officers' testimony that the Defendant failed two out of three field sobriety tests, in the case at hand this Court was also able to consider the same dashboard camera video of the Defendant's arrest that was viewed at trial. We find the Defendant's actions and speech as reflected in the video support the jury's verdict of guilt. See State v. Binette, 33 S.W.3d 215, 219 (Tenn. 2000) (holding that an appellate court is "[e]qually as capable as the trial court of reviewing [video] evidence").

Viewed in its entirety, the evidence that was presented to the jury is sufficient to support its conclusion that the Defendant was driving while under the influence of an intoxicant. The expert witness testimony was also properly admitted into evidence and was entitled to whatever weight or credibility the jury attributed to it. Accordingly, we find the Defendant has failed to carry his burden of demonstrating the evidence was insufficient to support his conviction. Therefore, after considering all of the evidence presented in the light most favorable to the State, we conclude that the evidence was sufficient to support the Defendant's conviction for DUI beyond a reasonable doubt. This issue is without merit.

## CONCLUSION

Based on the above stated reasons and authority, the judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-8-